# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARMONI MASUD JOHNSON, | : | CIV NO. 3:14-CV-1490 |
| Plaintiff, | : | (Judge Mariani) |
| v. | : | (Magistrate Judge Carlson) |
| WALTER KOEHLER, CHRISTOPHER O'BRIEN, and CHRISTOPHER LAMB, | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I. Statement of Facts and of The Case

The factual background of this dispute can be simply stated: This longstanding *pro se* prisoner civil rights lawsuit was filed by Armoni Johnson, a state inmate, in July of 2014. (Doc. 1.) In his complaint Johnson initially named a wide array of defendants and lodged a host of legal claims against these individual defendants. (Id.) As a result of prior litigation the claims and parties in this lawsuit have been narrowed considerably. In its current form, Johnson's lawsuit names three Pennsylvania State Troopers as defendants, Walter Koehler, Christopher O'Brien and Christopher Lamb. In his *pro se* complaint Johnson alleges that these defendants violated his due process and equal protection rights by entrapping him in the course of a state criminal investigation and prosecution. (Id.)

Johnson's complaint makes extensive reference to no less than four state criminal cases which were brought against him between 2010 and 2012, and the plaintiff seems to insist that an informed understanding of his claims requires us to consider these legal claims in the context of these four state criminal prosecutions. These four cases, which form the basis of this civil lawsuit, are as follows:

First, in Commonwealth v. Johnson, CP-40-CR-2193-2010, Johnson was charged with criminal drug possession in July of 2010. Johnson was convicted of this drug possession in September of 2011, and was sentenced in January of 2012. Johnson was later the subject of parole revocation proceedings in this case, and unsuccessfully challenged this conviction on appeal.

Second, in Commonwealth v. Johnson, CP-40-CR-2713-2011, Johnson was charged in August of 2011 with conspiracy, aggravated assault, and burglary. Johnson initially entered a guilty plea to one aggravated assault charge, but later withdrew that plea. Johnson was later found guilty of one count of aggravated assault in July of 2013, and was sentenced to 15-to-60 months imprisonment on this charge in October of 2013. Johnson is currently pursuing state post-conviction litigation in this case.

Third, in Commonwealth v. Johnson, CP-40-CR-117-2012, Johnson was charged with multiple counts of drug distribution and the use of communications facilities in drug trafficking in April of 2011. Johnson initially entered a guilty plea

in this case as well, but later withdrew his plea of guilty and proceeded to trial. At his March 14, 2016 trial, Johnson was convicted on four counts, and the government dismissed the remaining charges by *nolle prosequi*. Johnson was sentenced to 16-to-90 months imprisonment, a sentence that was ordered to run consecutively to the sentence imposed upon Johnson in <u>Commonwealth v. Johnson</u>, CP-40-CR-2713-2011. Johnson is pursuing post-conviction litigation in this case.

    Finally, in <u>Commonwealth v. Johnson</u>, CP-40-CR-2553-2012, Johnson was charged with multiple additional state drug trafficking offenses arising out of conduct that allegedly took place in May of 2012. These charges were later dismissed by the Commonwealth by *nolle prosequi* on March 14, 2016, the same day that Johnson was convicted on numerous drug charges in the case of <u>Commonwealth v. Johnson</u>, CP-40-CR-117-2012, and the court records provided by Johnson indicate that the state withdrew these charges immediately after Johnson was convicted on multiple drug charges in <u>Commonwealth v. Johnson</u>, CP-40-CR-117-2012. Nothing in the court records suggests in any way that this *nolle prosequi* rested upon a finding that Johnson was actually innocent of drug trafficking. Quite the contrary, the court records tendered by Johnson show that this discretionary decision was made by state prosecutors immediately after Johnson was convicted of numerous drug trafficking charges. It is this final state

criminal prosecution, Commonwealth v. Johnson, CP-40-CR-2553-2012, which forms the factual basis for Johnson's federal civil rights lawsuit against Troopers Koehler, O'Brien, and Lamb.

These defendants have now moved to dismiss Johnson's complaint, (Doc. 37), arguing *inter alia* that Johnson has not demonstrated a favorable termination of his state criminal cases in light of his multiple state convictions, and further contending that, while Johnson's entrapment claims in his state case might have provided a defense to criminal charges, they do not provide a basis for a federal civil rights claim. This motion to dismiss is fully briefed by the parties, (Docs. 40 and 43.) and is, therefore, ripe for resolution.

For the reasons set forth below, we recommend that this motion to dismiss be granted.

## II. Discussion

### A. Motion to Dismiss–Standard of Review

A motion to dismiss is designed to test the legal sufficiency of a complaint. Thus, Rule 12(b)(6) of the Federal Rule of Civil Procedure provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the

complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting Twombly, 550 U.S. at 555). Thus, "[a]t the motion to dismiss stage, we accept as true all factual assertions, but we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Twombly, 550 U.S. at 555–57; Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220–21 (3d Cir. 2011)).

> As the court of appeals has observed:
>
> The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal.

5

> The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief."'"

Burtch, 662 F.3d at 220-21 (alteration in original).

Thus, in assessing a motion to dismiss the court engages in a three-step analysis:

> "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id."

Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.") However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Applying these legal guideposts we find that Johnson's remaining *pro se* claims against Defendants Koehler, O'Brien, and Lamb are subject to dismissal for the reasons set forth below.

  **B.**  **Johnson's Complaint Should Be Dismissed**

    **1**.  **This Lawsuit Runs Afoul of The Favorable Termination Rule**

At the outset, the state court records submitted by Johnson reveal that Johnson's legal claims against these arresting police officers run afoul of a

fundamental guiding tenet governing federal civil rights claims that arise out of state prosecutions, the favorable termination rule. In Heck v. Humphrey, 512 U.S. 477 (1994), the United States Supreme Court addressed the legal interplay between federal civil rights lawsuits brought by state criminal defendants and the underlying state criminal cases which gave rise to those civil lawsuits. Decrying the potential for confusion and prejudice which may arise if criminal defendants are permitted to bring subsequent civil lawsuits making claims that undermine their criminal case outcomes, the Supreme Court announced a favorable termination rule, holding that: "One element that must be alleged and proved in a malicious prosecution action is the termination of the prior criminal proceeding in favor of the accused." Heck, 512 U.S. at 484.

Court have subsequently applied this favorable termination rule to situations like those presented here by Johnson, where a state criminal defendant has been convicted of multiple charges, and the Commonwealth in the exercise of its discretion then elects to dismiss, or *nolle prosequi*, some remaining charges pending against that defendant. The standards that govern such cases are now well-settled and have been described in the following terms:

> Section 659 of the Restatement (Second) Of Torts (1976) provides: "[c]riminal proceedings are terminated in favor of the accused by
>
> > (a) a discharge by a magistrate at a preliminary hearing, or

> (b) the refusal of a grand jury to indict, or
>
> (c) *the formal abandonment of the proceedings by the public prosecutor,* or
>
> (d) the quashing of an indictment or information, or
>
> (e) an acquittal, or
>
> (f) a final order in favor of the accused by a trial or appellate court."
>
> (emphasis added). "The usual method by which a public prosecutor signifies the formal abandonment of criminal proceedings is by the entry of a *nolle prosequi.*" Id. § 659, com. c, illus. e. As noted above, the trial court entered a *nol pros* here. However, while "a grant of *nolle prosequi* can be sufficient to satisfy the favorable termination requirement for malicious prosecution, not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably." Hilfirty v. Shipman, 91 F.3d at 579–580. A *nol pros* signifies termination of charges in favor of the accused "*only when their final disposition is such as to indicate the innocence of the accused.*" Id. § 660, cmt. a (emphasis added). Accordingly, in Hector v. Watt, 235 F.3d 154, 156 (3d Cir. 2000), we stated that a § 1983 malicious prosecution plaintiff "must be innocent of the crime charged in the underlying prosecution."

Donahue v. Gavin, 280 F.3d 371, 383 (3d Cir. 2002). "Thus, a *nolle prosequi* indicates termination of the charges in favor of the accused 'only when their final disposition is such as to indicate the innocence of the accused.'" Weaver v. Beveridge, 577 F. App'x 103, 105 (3d Cir. 2014) (quoting Donahue, 280 F.3d at 383).

9

In the instant case, the court records provided by Johnson and relied upon by him in prosecuting this civil lawsuit fatally undermine his claims under the favorable termination rule as that rule has been applied by the courts. While it is apparent that prosecutors exercised their discretion and entered a *nolle prosequi* in Commonwealth v. Johnson, CP-40-CR-2553-2012, the state criminal case which forms the factual basis for Johnson's federal civil rights lawsuit against Troopers Koehler, O'Brien and Lamb, it is also absolutely clear that nothing about that *nolle prosequi* in any way reflected an acknowledgement of Johnson's innocence on drug trafficking charges. Quite the contrary, this *nolle prosequi* immediately followed the last of a series of convictions of Johnson for an array of offenses involving drug possession, Commonwealth v. Johnson, CP-40-CR-2193-2010; aggravated assault, Commonwealth v. Johnson, CP-40-CR-2713-2011; and drug trafficking, Commonwealth v. Johnson, CP-40-CR-117-2012. Viewed in this factual context—the context that Johnson directly invites us to consider—the *nolle prosequi* of Johnson's final criminal case utterly lacks the essential element of a favorable termination for purposes of the favorable termination rule, which requires that "a *nolle prosequi* indicates termination of the charges in favor of the accused '*only when their final disposition is such as to indicate the innocence of the accused*.'" Weaver, 577 F. App'x at 105 (quoting Donahue, 280 F.3d at 383) (emphasis added). Indeed, there is nothing about the state decision to dismiss some

drug charges pending against Johnson in the immediate wake of Johnson's conviction on multiple drug charges that in the remotest way suggests the innocence of the accused. Therefore, adopting the perspective urged upon us by Johnson, who has directed our attention to consideration of all of his Luzerne County charges and convictions, we find that Johnson's civil lawsuit is barred by the favorable termination rule, as the *nolle prosequi* of some of his criminal charges following multiple criminal convictions for similar and identical misconduct does not indicate in any way that Johnson was actually innocent of these offenses.

### 2. **Johnson May Not Bring a Civil Lawsuit Based Solely Upon an Entrapment Defense in a Prior Criminal Case**.

Aside from the bar of the favorable termination rule, Johnson's claims against Troopers Koehler, O'Brien, and Lamb fail for several additional reasons. In his complaint Johnson seems to allege that his state prosecution was improper and improvident because he had been entrapped into committing the multiple acts of drug trafficking charged against him in May of 2012. This allegation, which forms the lynchpin of Johnson's federal civil rights claims against these police officers, runs afoul of a series of legal obstacles.

First, Johnson's claim ignores the legal standards governing the entrapment defense and discounts the immutable fact of his own prior drug trafficking

11

conviction. As a matter of law "[e]ntrapment occurs when a defendant who was not predisposed to commit the crime does so as a result of the government's inducement. The entrapment defense thus focuses on 'the intent or predisposition of the defendant to commit the crime.'" United States v. Jannotti, 673 F.2d 578, 597 (3d Cir. 1982) (quoting United States v. Russell, 411 U.S. 423, 429 (1973)). Given that the defense of entrapment turns on the defendant's predisposition, and that Johnson's prior drug trafficking convictions reflect a finding of a previous predilection to traffic in narcotics, it is entirely unclear that Johnson could actually avail himself of this defense in a criminal prosecution.

In any event, to the extent that Johnson's claims in this lawsuit rest upon his criminal entrapment defense, Johnson confuses the criminal defense of entrapment with an affirmative federal civil rights claim. While entrapment is—in proper circumstances—a defense in a criminal prosecution, this criminal defense, standing alone, typically is not sufficient to support a free-standing federal constitutional tort claim. Indeed, as this court has previously observed for Johnson:

> "While entrapment may be a proper defense in a criminal action, a police officer's participation in such activity does not constitute a constitutional violation." Jones v. Bombeck, 375 F.2d 737, 738 (3d Cir. 1967); Mills v. City of Harrisburg, 589 F. Supp. 2d 544, 553 n. 4 (M.D. Pa. 2008) (Conner, J.) (stating that "entrapment is not a cognizable constitutional violation under § 1983"); see Gaskins v. 17 Officers, 2009 U.S. Dist. LEXIS 112756, *17–18 (D.N.J. 2009) (concluding that the entrapment claim presented by the plaintiff, which alleged that the police participated in an unlawful drug sale, was "not of a constitutional dimension," and dismissing it for failure

12

> to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1)). Accord Brown v. Butler, 1989 U.S. Dist. LEXIS 8571, 1989 WL 24871 (E.D. Pa. 1989) ("Entrapment may violate an individual's substantive due process rights if it is sufficiently outrageous in form." (citing United States v. Twigg, 588 F.2d 373, 378–79 (3d Cir. 1978))). Likewise, Plaintiff's allegation that the "Dailey Reporting Center" conspired to entrap Plaintiff is not of a constitutional dimension. Jones, 375 F.2d at 738; Mills, 589 F. Supp. 2d at 553 n. 4.

Johnson v. Koehler, No. 3:14-CV-1490, 2015 WL 1470948, at *12 (M.D. Pa. Mar. 31, 2015), appeal dismissed (Oct. 8, 2015).

This paucity of case law supporting Johnson's efforts to convert the criminal defense of entrapment into a federal civil rights claim, in turn, underscores a third fatal defect in this claim—the defendants are entitled to qualified immunity. Thus, even if Johnson had stated a colorable constitutional claim based upon this entrapment defense, the defendants would still be entitled to qualified immunity from these claims for damages. In order to establish a civil rights claim Johnson must show the deprivation of a right secured by the United States Constitution or the laws of the United States. Satisfying these elements alone, however, does not guarantee that Johnson is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary

13

functions not only defense to liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity thus

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part on other grounds by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. Saucier, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity

14

if a reasonable state actor under the circumstances would understand that his conduct violates that right. Saucier, 533 U.S. at 202.

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).") Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved pretrial through a dispositive motion. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

Turning to the facts in this case, it is evident that courts have repeatedly rejected efforts like those made here by Johnson to convert the criminal defense of entrapment into an affirmative federal civil rights claim. See e.g., Johnson v. Koehler, No. 3:14-CV-1490, 2015 WL 1470948, at *12 (M.D. Pa. Mar. 31, 2015) (collecting cases), appeal dismissed (Oct. 8, 2015). Given this settled body of existing case law rejecting the legal claims advanced by Johnson in this lawsuit, nothing could have alerted these officials that their actions might violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999). Therefore, Johnson's federal claims against these defendants, which rest upon a legally suspect effort to extend the criminal defense of entrapment into an affirmative civil claim, would be barred by qualified immunity and should be dismissed.

### III.  Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss, (Doc. 37), be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and

all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of October, 2017.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge